## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
_____

YAN ZHANG,

        Plaintiff,


v.                        **MEMORANDUM OF LAW & ORDER**
                             Civil File No. 06-2265 (MJD/AJB)


EQUITY OFFICE PROPERTIES TRUST,

        Defendant.
_____

Yan Zhang, pro se.

James R. Harries and David A. Orenstein, Parsinen Kaplan Rosberg & Gotlieb, Counsel for Defendant.
_____


## I.     INTRODUCTION

This matter is before the Court on Plaintiff Yan Zhang's Motion for Partial Summary Judgment [Docket No. 7]; Defendant Equity Office Properties Trust's Motion for Summary Judgment or to Dismiss [Docket No. 18]; and Defendant's Motion for Sanctions [Docket No. 36]. The Court heard oral argument on December 1, 2006.

## II.    FACTUAL BACKGROUND

### A.    Parties

Plaintiff Yan Zhang is the president and majority shareholder of Global Industries, Inc. ("Global").  Global became insolvent in 2001.

Defendant Equity Office Properties Trust ("EOP Trust") is a real estate investment trust formed under the laws of Maryland, with its headquarters in Chicago, Illinois.  MN-Northland Plaza, LLC, formerly known as EOP-Northland Plaza LLC, ("Northland") was a limited liability company, formed under the laws of Delaware.  Northland's sole asset was an office building in downtown Minneapolis known as "Northland Plaza."  Northland had one member: EOP Operating Limited Partnership.  Defendant EOP Trust is the general partner of EOP Operating Limited Partnership.  Northland was dissolved on January 12, 2005.  Global was a tenant of Northland.

### B.     First Action

In January 2003, Northland commenced a rent collection lawsuit against Global in Hennepin County District Court, captioned <u>EOP-Northland Plaza, L.L.C., v. Global Industries, Inc.</u>, Court File No. 03-1131 ("First Action").  The case was before Judge Cara Lee Neville.  Northland was represented by attorney David Orenstein.  Global was represented by attorney Steven Bard.

On January 27, 2003, Orenstein wrote an email to the Northland Plaza property manager, Kelly Lentz, which stated, "I spoke with Global's attorney. . . . Also, he told me that Global has $400,000 in some sort of Piper Jaffray fund . . . ."

Early in the litigation, Bard told Orenstein that Global had transferred almost all of its assets to its principals, Zhang and Mark Kaiser, and had no assets. Later, in a May 14, 2003, email, Bard acknowledged that he had told Orenstein that Zhang and Kaiser had "divided up" Global's assets, as well as its responsibilities.

Based on Bard's representation, Orenstein asked Bard if Global would allow Northland to amend its Complaint to assert a claim against Kaiser and Zhang for breach of fiduciary duty and misappropriation of corporate assets. On March 18, 2003, Bard stated that Global would not consent.

On April 7, 2003, Orenstein sent an unsigned, proposed Amended Complaint including the claims against Zhang and Kaiser to Bard, along with a letter requesting Global's consent. Northland proposed to amend its Complaint to add claims against Zhang and Kaiser as defendants and to sue them for having engaged in fraudulent transfer with Global. Along with the proposed Amended Complaint, Orenstein enclosed a "Consent to Amend Complaint and Admission of Service."

On April 8, Bard served Orenstein with a notice of withdrawal as counsel for Global. On April 11, Orenstein met with Zhang for settlement negotiations.

On April 12, 2003, Northland served Global with a Rule 30.02(f) deposition notice. On April 15, 2003, Orenstein took Global's Rule 30.02(f) deposition, and Global produced Zhang to testify.

On May 5, 2003, Bard served Orenstein with notice that he was resuming representation of Global; the "Consent to Amend Complaint and Admission of Service" signed by Bard and Zhang on May 2, attached to the proposed, unsigned Amended Complaint; and Zhang's Separate Answer and Counterclaim to Amended Complaint.  That same day, Orenstein contacted Bard and informed him that Northland had decided not to pursue the Amended Complaint because, during Zhang's deposition, Orenstein had learned that Kaiser and Zhang had not transferred Global's assets to themselves.  Orenstein asked Bard to stipulate to dismissal of the Amended Complaint without prejudice.  Zhang refused to sign the stipulation of dismissal without prejudice.

On May 20, 2003, Zhang served his Answer and Counterclaim to the Amended Complaint, which added a count against Northland entitled: "Count III: Claim by this Defendant for this Defendant's Damages in this Litigation."  Count III alleged that Northland had "intentionally fabricated allegations and accusations against Defendant and is using the law system to harass Defendant."  Zhang asserted that Count III was a claim for sanctions under Minnesota Statute § 549.211.  In a memorandum to the court, he explained that he did "not want to sue Plaintiff for Malicious Prosecution or Abuse of Process at this stage of the litigation.  In fact, Defendant Zhang plans to sue Plaintiff for Malicious Prosecution after he prevails in this case."

On July 18, 2003, Northland moved to voluntarily dismiss, without prejudice, its claims against Zhang.

In Zhang's Memorandum in Opposition to Plaintiff Motion to Dismiss Counterclaims of Yan Zhang, he informed the court of his version of the above events.  He asserted that Bard invited Orenstein to examine Global's finances.  He claimed that during document discovery, on May 16, 2003, he found the January 27, 2003 email from Orenstein indicating that Bard told Orenstein that Global had $400,000 in assets.  Zhang refers to this document as the "Key Memorandum."  Zhang asserted that from April 7 through May 1, 2003, Orenstein claimed that the Amended Complaint was effective and used the new lawsuit to harass and threaten Zhang.  Zhang also asserted that Orenstein used abusive deposition techniques.  Generally, Zhang claims that during the course of the First Action, Orenstein threatened and intimidated him by threatening to file another lawsuit against Zhang personally if he refused to pay Northland.

In response to Zhang's memorandum, Northland filed the Supplemental Orenstein Affidavit, in which Orenstein denied the existence of the Key Memorandum and averred that Bard had never told him that Global had $400,000 worth of assets.  Then, on September 25, 2003, the day before the hearing on Northland's motion to dismiss, Orenstein sent an e-mail to Zhang stating that Orenstein had made a mistake and that, in fact, Global's attorney had told him that Global had a Piper Jaffray Fund worth $400,000.  Orenstein also

admitted that he had recounted this conversation in an email to Kelly Lentz, which was a privileged document inadvertently disclosed to Zhang.  Orenstein told Zhang that he would "tell these facts to the Judge tomorrow so that the record in the case is accurate."

During the motion hearing on September 26, 2003, Orenstein told the court:

> I want to correct a misstatement that I made in my reply papers.  I said, and I told Mr. Zhang I would do this and I apologized to him for this, I said in those papers that Mr. Bard never told me that Global had four hundred thousand dollars in assets.  And in fact I discovered after I filed my papers that he did tell me that.  He told me that early on before this conversation about the parties transferring the assets of the corporation to themselves, and I actually wrote an e-mail to the property manager saying, you know, that is what happened and this is basically good news and they have got money.
>
> So subsequently Mr. Bard tells me no, they have transferred the assets to themselves, and I sent out this proposed amended complaint, to which Mr. Bard will not consent.  He tells me so in a letter which I think I also attached, and he then also tells me he's withdrawing form the case.

(Tr. of Sept. 26, 2003 Hearing at 4-5.)

On December 1, 2003, the court granted Northland's motion to voluntarily dismiss its claims against Zhang, without prejudice, and Northland's motion to dismiss Zhang's counterclaims.  (On January 9, 2004, the court issued an Amended Memorandum Granting Plaintiff's Motions.  The correction did not affect the court's ruling.)

In its order dismissing Zhang's counterclaim for sanctions, the court found that Northland's fraudulent transfer claims against Zhang did not violate Minnesota Statute § 549.211, subdivision 2.  The court also found, "Plaintiff [Northland] has provided a sufficient explanation for dismissal.  Plaintiff prepared the proposed Amended Complaint upon reasonable belief that Zhang may have been involved in a fraudulent transfer."  (Jan. 9, 2004 Order at 4 (footnote omitted).)  The court also held that Zhang suffered no prejudice from the dismissal of Northland's claim without prejudice, preventing Zhang from suing Northland for malicious prosecution, because "the Court finds that Northland had a reasonable basis for amending its Complaint to include Zhang.  Accordingly, a claim for malicious prosecution would not stand and there is no prejudice to Zhang."  (Id. at 5.)

## C.    Second Action

In January 2004, Zhang commenced a new action in Hennepin County District Court against Northland, Orenstein, and EOP Trust, Court File No. 04-1399.  ("Second Action").  The case was also before Judge Cara Lee Neville.  Zhang alleged Count I, intentional and negligent infliction of emotional distress; Count II, malicious prosecution; and Count III, punitive damages, all based on Northland's litigation in the First Action.   These claims were based on the same factual allegations Zhang made in his Memorandum in Opposition to Northland's Motion to Dismiss Zhang's Counterclaim in the First Action.

Northland, EOP Trust, and Orenstein moved to dismiss the Amended Complaint with prejudice for failure to state a claim and on the grounds of collateral estoppel. On November 30, 2004, the court granted that motion. The court held that Zhang's malicious prosecution claim was collaterally estopped by the Order for Dismissal in the First Action because that Order found that Northland's Amended Complaint against Zhang was brought on reasonable grounds, and the other requirements for collateral estoppel had been met. The court also held that, as a matter of law, Zhang's intentional and negligent infliction of emotional distress allegations failed to state a claim upon which relief could be granted. The court awarded EOP Trust, Northland, and Orenstein Rule 11 sanctions of $56,344 representing the attorney fees and costs that they incurred defending the Second Action.

Zhang appealed the court's dismissal of his Amended Complaint and the imposition of sanctions. In an unpublished opinion, the Minnesota Court of Appeals affirmed. Zhang v. Equity Office Props. Trust, No. A05-1094, 2006 WL 922883, at *6 (Minn. Ct. App. Apr. 11, 2006) (unpublished). The Minnesota Supreme Court denied review on June 20, 2006. Zhang has never paid the Rule 11 sanctions imposed in the Second Action.

### D.    Third Action

In October 2004, after Zhang lost his motion to remove Judge Neville in the Second Action, he commenced another malicious prosecution action against

Northland, EOP Trust, and Orenstein, in Hennepin County District Court, File No. MC 04-15785 ("Third Action").  On October 26, 2004, the court, Judge Marilyn Justman Kaman, sua sponte dismissed the action with prejudice.  The court held that Zhang had failed to provide a short and plain statement of his claim for relief. It also noted the existence of the Second Action, and held that "filing this second lawsuit with the same parties and issues while the earlier lawsuit is still in litigation does not assist an already over-burdened legal system nor is it proper." (Oct. 26, 2004 Order at 3.)  The court reasoned that the new lawsuit "represents a continuing attempt by Plaintiff to have Judge Neville removed as the judicial officer."  (Id. at 2.)

### E.     Current Litigation

On June 6, 2006, Zhang filed the current action against EOP Trust in this Court ("Federal Action").  On June 15, he filed his Amended Complaint.  In his Amended Complaint, Zhang recounts his version of the events of the First Action, including the Key Memorandum incident, Northland's attempt to sue him for fraudulent transfer, Orenstein's deposition of him, Northland's failure to sign the Proposed Amended Complaint, and general harassment by Orenstein and Northland related to negotiation of the First Action.  In his Amended Complaint, Zhang uses EOP Trust's name to refer to actions taken by Northland in the First Action.  Zhang does not assert any specific counts or claims against EOP Trust, but mentions "abuse of legal process" and violation of his Fourteenth Amendment

right to due process.  He also seeks damages for emotional distress and loss of income.

In his memoranda, he explains that he believes EOP Trust committed abuse of process by misleading the Minnesota courts in the previous actions and causing them to award sanctions against him; causing Zhang to lose jobs; and causing him to suffer emotional distress.

The underlying factual allegations supporting Zhang's claims in this Federal Action are the same events that occurred in the First Action.  Zhang has admitted this fact.  Additionally, almost all of the factual allegations appeared previously in the Second Action.   Although the allegation that Northland's Amended Complaint was ineffective was not explicitly raised in the Amended Complaint in the Second Action, that issue was ruled on in the Second Action by both the district court and the Minnesota Court of Appeals.

Defendant now moves for summary judgment on the abuse of process claim and emotional distress claim under the doctrines of collateral estoppel, res judicata, and on the grounds that all of Zhang's allegations pertain to Northland, not EOP Trust.  Defendant also moves to dismiss Zhang's abuse of process claim for failure to state a claim under Rule 12(c).  Additionally, Defendant moves for summary judgment or to dismiss Zhang's constitutional claim.  Finally, Defendant requests Rule 11 sanctions.

Zhang moves for partial summary judgment on the abuse of process claim only.

## III.   DISCUSSION

### A.   Cross-Motions for Summary Judgment

#### 1.   Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Celotex, 477 U.S. at 323.  Summary judgment is only appropriate when "there is no dispute of fact and where there exists only one conclusion."  Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted).

#### 2.   Collateral Estoppel and Res Judicata

EOP Trust asserts that Zhang's Complaint should be dismissed under both the doctrine of collateral estoppel and res judicata.  These are two related, but distinct, doctrines.

Under the doctrine of collateral estoppel, also known as issue preclusion, "when an issue of ultimate fact has been determined by a valid judgment, it may not again be litigated between the same parties."  Liberty Mut. Ins. Co. v. FAG

Bearings Corp., 335 F.3d 752, 758 (8th Cir. 2003) (citation omitted). "Collateral estoppel relates to the sub-elements and facts one must prove up in order to sustain an overarching cause of action." Lundquist v. Rice Mem'l Hosp., 121 Fed. Appx. 664, 668 (8th Cir. Jan. 26, 2005) (unpublished).

In contrast, under the doctrine of res judicata, also known as claim preclusion, a party is barred from bringing "repetitive suits involving the same cause of action." Lundquist v. Rice Mem'l Hosp., 238 F.3d 975, 977 (8th Cir. 2001) (citation omitted). "Final judgment on the merits of an action precludes the same parties from relitigating issues that were or could have been raised in that action." Id. (citation omitted).

The principles of collateral estoppel and res judicata apply to prevent relitigation of a prior court's determination that a particular issue or claim is barred by collateral estoppel or res judicata. Sykes v. James, 13 F.3d 515, 521 (2d Cir. 1993); Matter of Brady, Texas, Mun. Gas Corp., 936 F.2d 212, 219 (5th Cir. 1991). The Court looks to Minnesota law to determine whether either doctrine applies. United States v. B.H., 456 F.3d 813, 816 (8th Cir. 2006).

### 3.   Abuse of Process Claim

#### a.   Collateral Estoppel

Collateral estoppel bars the relitigation of issues which are both identical to those issues already litigated by the parties in a prior action and necessary and essential to the resulting judgment. Collateral estoppel is applicable where (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the

merits; (3) the estopped party was a party or in privity with a party
to the prior adjudication; and (4) the estopped party was given a full
and fair opportunity to be heard on the adjudicated issue.

Pope County Bd. of Comm'rs v. Pryzmus, 682 N.W.2d 666, 669 (Minn. Ct. App.

2004) (citations omitted).  Minnesota has done away with the mutuality rule and

permits defensive collateral estoppel.  Aufderhar v. Data Dispatch, Inc., 452

N.W.2d 648, 652 (Minn. 1990).  Thus, it is irrelevant whether EOP Trust was a

party to the First Action; "[i]nstead, Minnesota focuses upon whether the party

sought to be estopped was the claimant on the issue in both proceedings." Id.

(footnote omitted).

In this case, there has been a final judgment on the merits in at least the

First Action and Second Action.  Plaintiff Zhang was a party to both prior actions.

The remaining two prongs are whether a particular issue is identical to one

decided in the previous litigation and whether Zhang had a full and fair

opportunity to be heard on the particular issue in the prior litigation.

Defendant claims that Zhang is collaterally estopped on three essential

issues for this claim: whether the state court in the First Action lacked jurisdiction

over him; the issue of collateral estoppel itself, as decided by the Minnesota

District Court's dismissal of his malicious prosecution claim in the Second Action;

and whether Northland or Orenstein acted with an improper purpose in the First

Action in bringing the fraudulent transfer claim.

### i.     Personal Jurisdiction

Zhang claims that the state court's ruling in the First Action has no collateral estoppel effect in this action because he was never served with the Amended Complaint in the First Action containing the fraudulent transfer claims. Thus, Zhang asserts, the court in the First Action did not have jurisdiction over him.

Zhang is precluded from raising this argument because he already argued and lost the personal jurisdiction issue in the Second Action, both before the district court and the Court of Appeals.  The Minnesota Court of Appeals held:

> Zhang also argues that the first lawsuit cannot be a basis for the application of collateral estoppel here because the district court lacked personal jurisdiction over him, claiming insufficient service of process resulting in an 'ineffective lawsuit.'  But the record shows that Zhang did not object to the sufficiency of service of process or personal jurisdiction in the first lawsuit; that he filed counterclaims against Northland in the first suit, thereby affirmatively invoking the district court's jurisdiction; and that he opposed Northland's attempts to dismiss him as a party.  **Therefore, Zhang waived the defenses of lack of personal jurisdiction and insufficiency of process**.

Zhang v. Equity Office Props. Trust, No. A05-1094, 2006 WL 922883, at *4 (Minn. Ct. App. Apr. 11, 2006) (unpublished) (footnote and citations omitted) (emphasis added).  The precise jurisdictional issue that Zhang now raises was decided in the Second Action, and Zhang had a full and fair opportunity to be heard on that issue, including appellate review after briefing on this issue.  Zhang is collaterally estopped from revisiting the validity of the First Action.

### ii.    Improper Purpose and Collateral Estoppel

The Court concludes that Zhang cannot collaterally attack the state court's determination, in the Second Action, that the court's findings in the First Action that Northland had reasonable grounds to sue Zhang for fraudulent transfer and did not assert the fraudulent transfer claim for an improper purpose, had a collateral estoppel effect.  Zhang is precluded from relitigating those issues again in federal court.  Not only are the issues the same, the Second Action came to final judgment, through an appeal to the Minnesota Court of Appeals, and Zhang was a party to the Second Action.  Zhang had a full and fair opportunity to be heard on the collateral estoppel issue in the Second Action.

Not only is Zhang collaterally estopped by the Second Action, but also, he is collaterally estopped by the First Action.  In order to prove abuse of process, Zhang must first prove the existence of an improper ulterior purpose for the claim for fraudulent transfer against him in the First Action.  Dunham v. Roer, 708 N.W.2d 552, 571 (Minn. Ct. App. 2006).  Zhang litigated and lost this issue in the First Action when the court held that Northland acted reasonably.  He had a full and fair opportunity to be heard on this issue.  Thus, the judgment in the First Action, dismissing Zhang's counterclaim for violation of Minnesota Statute § 549.211, also collaterally estops Zhang from proceeding with his abuse of process claim in this Federal Action.

All four prongs of collateral estoppel are met in both the First Action and the Second Action as to the issue of whether Northland or its attorney acted with

an improper purpose in the First Action.  Because Zhang now claims that EOP

Trust is somehow liable for Northland's actions in the First Action, his abuse of

process claim against EOP Trust is collaterally estopped.

### b.      Res Judicata

EOP Trust also argues that the abuse of process claim is barred by the

doctrine of res judicata.  The Court has already concluded that Zhang's claim is

barred by collateral estoppel.  However, Zhang has persisted in asserting this

claim despite multiple court orders to cease.  In order to clarify yet another reason

that Zhang must cease asserting the abuse of process claim, the Court analyzes

EOP Trust's res judicata argument.

"The doctrine of res judicata bars a claim where litigation on a prior claim

involved the same cause of action, where there was a judgment on the merits, and

where the claim involved the same parties or their privies."  <u>Wilson v. Comm'r of

Revenue</u>, 619 N.W.2d 194, 198 (Minn. 2000).  "In addition, the party against

whom res judicata is applied must have had a full and fair opportunity to litigate

the matter in the prior proceeding.  If those requirements are met, res judicata

bars not only claims as to matters actually litigated, but also as to every matter

that *might have been litigated* in the prior proceeding."  <u>Id.</u> (citations omitted).  In

this case, res judicata bars Zhang's abuse of process claim against EOP Trust

because it could have been litigated in the Second Action.

All of events and facts that Zhang alleges in the Amended Complaint in this Federal Action occurred in connection with the First Action and could have been litigated in the Second Action, which addressed EOP Trust's, Orenstein's, and Northland's alleged conduct in the First Action.  The Second Action was based on the same factual predicate as this current Federal Action.  Also, both Zhang and EOP Trust were parties to the Second Action and final judgment was entered in the Second Action on the merits.  Finally, Zhang had a full and fair opportunity to be heard in the Second Action.  The Second Action meets all four prongs of the res judicata test.  Zhang's abuse of process claim is barred under the doctrine of res judicata.

### 4.    Constitutional Due Process

Zhang alleges that EOP Trust "committed fraud and perjury" in order to obtain a judgment against him of "more than $100,000," and that, in doing so, it violated Zhang's right to due process under the Fourteenth Amendment.  (Am. Compl. ¶ 13.)  EOP Trust is entitled to summary judgment on this claim because the due process protections of the Fourteenth Amendment do not extend to private conduct by private individuals.  Jackson v. Metro. Edison Co., 419 U.S. 345, 349 (1974).

Zhang makes no allegation that EOP Trust is a state actor or that it exercised "powers traditionally exclusively reserved to the State."  Id. at 352. Thus, this claim is dismissed.  See, e.g., Sandy Hill Apartments v. Kudawoo, Civil

No. 05-2327 (PAM/JSM), 2006 WL 2974305, at *2 (D. Minn. Oct. 16, 2006)

(unpublished) ("The Fourteenth Amendment . . . requires a state actor to have

caused the constitutional deprivation at issue.") (citing <u>Rendell-Baker v. Kohn</u>,

457 U.S. 830, 837 (1982)).

### 5.    Claim for Intentional or Infliction of Emotional Distress

Zhang seeks seven million dollars in damages for "the suffering of Zhang's

emotional distress." This claim is based on Northland's litigation actions in the

First Action.

### a.    Collateral Estoppel

Zhang is collaterally estopped from bringing an intentional infliction of

emotional distress claim because the court in the First Action held that Northland

acted reasonably and with no improper purpose in pursuing the fraudulent

transfer claim against Zhang. There are four elements to an intentional infliction

of emotional distress claim: "(1) the conduct must be extreme and outrageous;

(2) the conduct must be intentional or reckless; (3) it must cause emotional

distress; and (4) the distress must be severe." <u>Hubbard v. United Press Int'l, Inc.</u>,

330 N.W.2d 428, 438-39 (Minn. 1983). Zhang cannot prove that Defendant's

conduct was "extreme and outrageous" when the court in the First Action already

held that Northland's conduct was reasonable. Zhang was a party to the First

Action; he had a full and fair opportunity to be heard; and the First Action ended

in a final judgment on the merits.

Similarly, Zhang is barred from bringing a claim for negligent infliction of emotional distress.  Generally, a claim for negligent infliction of emotional requires proof that the plaintiff was in a "zone of danger of physical impact." Engler v. Ill. Farmers Ins. Co., 706 N.W.2d 764, 767 (Minn. 2005).  Zhang has not alleged or offered proof that he was within a zone of physical danger.  "An exception to the 'zone of danger' rule is that a plaintiff may recover damages for mental anguish or suffering for a direct invasion of his rights, such as defamation, malicious prosecution, or other willful, wanton or malicious conduct."  Bohdan v. Alltool Mfg., Co., 411 N.W.2d 902, 907 (Minn. Ct. App. 1987).  Because Zhang is collaterally estopped from contesting that Northland acted reasonably in the First Action, as previously explained, a claim of negligent infliction of emotional distress cannot be sustained under this exception.

Additionally, the court in the Second Action dismissed Zhang's emotional distress claims against Northland, Orenstein, and EOP Trust based on malicious prosecution and Orenstein's litigation tactics, among other things.  This determination must be given collateral estoppel effect because Zhang was a party to the Second Action; final judgment was entered dismissing Zhang's intentional and negligent infliction of emotional distress claim against Northland, Orenstein, and EOP Trust; and Zhang had a full and fair opportunity to be heard in the Second Action.

**b.      Res Judicata**

Furthermore, Zhang could have brought this emotional distress claim, based on events occurring in the First Action, against EOP Trust in the Second Action.  Both Zhang and EOP Trust were parties to the Second Action; Zhang had a full and fair opportunity to litigate the emotional distress claim; and the Second Action involved Northland's litigation tactics in the First Action, which is the same factual predicate as this Federal Action.

Zhang's emotional distress claim is barred by both res judicata and collateral estoppel, so his claim now must be dismissed.

For the reasons explained above, the Court concludes that Zhang's entire Amended Complaint must be dismissed.  The Court now turns to EOP Trust's Rule 11 motion for sanctions.

### B.    Motion for Sanctions

#### 1.    Standard

Federal Rule of Civil Procedure 11 provides that when an attorney or "unrepresented party," such as Zhang, presents a paper, pleading, or written motion to the court, he is

> certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; [and]

> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

Fed. R. Civ. P. 11(b).  When determining whether a Rule 11 violation has occurred, the Court "must apply an objective reasonableness standard to determine whether the pleading was frivolous, groundless, or advanced for an improper purpose."  Pulaski County Republican Comm. v. Pulaski County Bd. of Election Comm'rs, 956 F.2d 172, 173 (8th Cir. 1992) (citation omitted).  The Court's decision is reviewed for abuse of discretion.  Id.  Rule 11 applies to pro se litigants.  Carman v. Treat, 7 F.3d 1379, 1382 (8th Cir. 1993).

### 2.    Applicability of Sanctions in This Case

"[A] district court abuses its discretion by refusing to sanction a plaintiff and his counsel under Rule 11 for filing and maintaining a frivolous lawsuit when the plaintiff seeks to relitigate claims he had been denied leave to serve against the same defendant in an earlier lawsuit."  Prof'l Mgmt. Assocs., Inc. v. KPMG LLP, 345 F.3d 1030, 1033 (8th Cir. 2003) (citations omitted).

EOP Trust asserts that sanctions are warranted because Zhang is engaging in judge shopping.  In the First Action, he made a motion to remove Judge Neville because he disagreed with her rulings.  While the Second Action was still pending before Judge Neville, he filed a duplicate Third Action in an attempt to draw another judge.  Zhang is now relitigating the same issues, already dismissed by

two state court judges and the Minnesota Court of Appeals, for the purpose of obtaining a new judge in a new forum.  Based on the multiple previous court rulings, including sanctions, Zhang knew that his Federal Action was barred by collateral estoppel and res judicata.

Zhang argues that his case raises novel issues of law regarding the validity of service in the First Action.  However, because the Minnesota Court of Appeals has already specifically ruled on Zhang's argument, this issue is not unique.  Instead, it is barred by collateral estoppel.

The Court finds that Zhang has engaged in frivolous, bad faith litigation in light of the fact that he has previously lost these same claims three times and been sanctioned by the state court.  His repeated filing of new lawsuits based on the same issues constitutes harassment.  Zhang was provided ample notice of EOP Trust's Rule 11 motion and failed to withdraw his frivolous lawsuit.  Rule 11 sanctions are warranted.

### 3.    Type of Sanctions

The purpose of Rule 11 sanctions is "to deter attorney and litigant misconduct."  Kirk Capital Corp. v. Bailey, 16 F.3d 1485, 1490 (8th Cir. 1994).  Zhang has already been subject to monetary sanctions, and they did not deter him from filing the same lawsuit again in federal court.  EOP Trust argues that because monetary sanctions have not been effective, the Court should also grant an injunction enjoining Zhang from filing any further lawsuits against it and

various related entities unless the complaint is signed by a licensed attorney and Zhang simultaneously files a sworn statement with the Court that he has paid all Rule 11 sanctions imposed against him.  The entities that EOP Trust seeks to protect from Zhang's lawsuits are

> EOP Trust;
>
> EOP Management, LLC (because by letter dated September 18, 2006, Zhang sought permission from opposing counsel to substitute EOP Management LLC, as a defendant in this Federal Action);
>
> EOP Operating Limited Partnership (because by letter dated September 18, 2006, Zhang sought permission from opposing counsel to substitute EOP Operating Limited Partnership as a defendant in this Federal Action);
>
> EOP Trust's in-house attorney Mathew Koritz (because Zhang has sought to depose EOP Trust's "In-House Attorney" in this Federal Action);
>
> Northland Plaza Building property manager Kelly Lentz (because Zhang has sought to depose Lentz in this Federal Action);
>
> Lentz's supervisor, Kevin Fossum (because Zhang has sought to depose Fossum in this Federal Action);
>
> David Orenstein and Jim Harries, EOP Trust's attorneys in this Federal Action, because Zhang has previously sued Orenstein in the Second and Third Actions and Zhang has demonstrated a pattern of suing opposing counsel.

An injunction is an appropriate sanction when a plaintiff has frivolously litigated the same issues three times before.  See, e.g., Stilley v. James, Nos. 02-2047, 02-2202, 2002 WL 31159298, at *2 (8th Cir. Sept. 30, 2002) (unpublished)

("The underlying issue has been litigated or raised for litigation in three lawsuits and two appeals.  The district court acted appropriately by helping Stilley stop pursuing fruitless litigation.").  The requested injunction is an appropriate Rule 11 sanction to prevent Zhang's continued frivolous litigation.

The Court also considers the requested relief to be appropriate under the Court's inherent power and duty to protect litigants from harassing, repeat litigation.  See In re Tyler, 839 F.2d 1290, 1293 (8th Cir. 1988) ("Defendants have a right to be free from harassing, abusive, and meritless litigation.  Federal courts have a clear obligation to exercise their authority to protect litigants from such behavior.") (citations omitted); Nelson v. Butler, 929 F. Supp. 1252, 1254, 1260 (D. Minn. 1996) ("permanently enjoining plaintiff from commencing an action against [defendants] on the same claims as were litigated here").  Without an injunction, Zhang will continue to harass Defendant and its related parties by attempting to relitigate issues from the First Action, forcing them to spend needless money and time defending against frivolous litigation and burdening the judicial system with fruitless claims.

EOP Trust further requests that the Court award EOP Trust its attorney fees and costs incurred in defending the Federal Action.  The Court may award requested attorney fees and costs under Rule 11 to punish the sanctioned party and to compensate the moving party.  Walker by Walker v. Norwest Corp., 108 F.3d 158, 162 (8th Cir. 1997).  Additionally, "an award of attorneys' fees is

24

permissible under a court's inherent powers as long as the person being sanctioned has demonstrated bad faith." Willhite v. Collins, 459 F.3d 866, 870 (8th Cir. 2006). The Court grants EOP Trust's Rule 11 request for reasonable attorney fees and costs in order to sanction Zhang for his bad faith frivolous behavior. The Court notes that these sanctions are also warranted under its inherent power because Zhang has demonstrated bad faith by continuing to litigate these matters despite previous sanctions and multiple court opinions ordering that his claims be dismissed.

The Court grants EOP Trust's Rule 11 request for both the award of attorney fees and costs and the injunction. Zhang has demonstrated bad faith by continuing to reassert the same claims despite being sanctioned and ruled against multiple times. As the Minnesota Court of Appeals has noted, Zhang is an "experienced litigator," who has previously been put on notice that his claims against EOP Trust are "not well grounded in fact or law." Zhang v. Equity Office Props. Trust, No. A05-1094, 2006 WL 922883, at *5 (Minn. Ct. App. Apr. 11, 2006) (unpublished). Additionally, the injunction is warranted because monetary sanctions have, so far, been ineffective. Both sanctions are also warranted under the Court's inherent power.

EOP Trust is ordered to submit, within thirty days from the date of this Order, a detailed accounting of the attorney fees and costs that it has incurred in this lawsuit. Zhang has thirty days from the date of EOP Trust's filing of its

accounting to file any objections to the requested fees and costs.  Zhang's

objections are to be limited to the appropriateness of EOP Trust's requested fees

and costs only.

### C.    Zhang's Request for Further Discovery

In his briefing, Zhang argues that he needs to conduct more depositions

and discovery in order to respond to EOP Trust's summary judgment motion.

Magistrate Judge Boylan denied Zhang's motion to compel discovery on

November 2, 2006.  Zhang did not appeal that ruling, and the time for appeal has

passed.  Also, additional discovery is unnecessary and irrelevant because Zhang's

entire Amended Complaint is barred as explained in this Order.  Zhang's request

for additional discovery is denied.

Accordingly, based upon the records, proceedings, and files herein, **IT IS**

**HEREBY ORDERED** that:

1.    Plaintiff Yan Zhang's Motion for Partial Summary Judgment
       [Docket No. 7] is **DENIED**.

2.    Defendant Equity Office Properties Trust's Motion for
       Summary Judgment or to Dismiss [Docket No. 18] is
       **GRANTED** and Zhang's Amended Complaint is **DISMISSED**
       **WITH PREJUDICE**.

3.    Defendant's Motion for Sanctions [Docket No. 36] is **GRANTED**
       as follows:

    a.    Zhang is fined Defendant's reasonable attorney fees and
           costs incurred in defending this action.  Within thirty
           days from the date of this Order, Defendant shall submit
           a detailed accounting of the costs and attorney fees it

has incurred.  Zhang shall submit his objections, if any, to those fees and costs within thirty days from the date that Defendant files its accounting.

b.    Zhang is hereby enjoined from commencing any further litigation against Equity Office Properties Trust; EOP Operating Limited Partnership; Equity Office Management, LLC; Mathew Koritz; Kelly Lentz; Kevin Fossum; the law firm of Parsinen Kaplan Rosberg & Gotlieb, P.A., or any of its attorneys or paralegals, including David A. Orenstein and James R. Harries; unless the Complaint is signed by a licensed attorney and is accompanied by sworn proof that Zhang has paid all monetary Rule 11 sanctions imposed against him.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   January 3, 2007                       s / Michael J. Davis
                                               Judge Michael J. Davis
                                               United States District Court